UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1347

DANNY O. SCHAFFER, on behalf of himself and
all others similarly situated,

Plaintiff - Appellant,

versus

WESTINGHOUSE SAVANNAH RIVER COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Aiken.  Cameron McGowan Currie, District Judge.
(CA-02-799)

Argued:  February 1, 2005          Decided:  March 11, 2005

Before WIDENER, MOTZ, and GREGORY, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

**ARGUED:** Marion Clyde Fairey, Jr., SPEIGHTS & RUNYAN, Hampton, South
Carolina, for Appellant.  Steven Mark Wynkoop, NELSON, MULLINS,
RILEY & SCARBOROUGH, Greenville, South Carolina, for Appellee.  **ON
BRIEF:** Daniel A. Speights, SPEIGHTS & RUNYAN, Hampton, South
Carolina, for Appellant.  Giles M. Schanen, Jr., NELSON, MULLINS,
RILEY & SCARBOROUGH, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Danny O. Schaffer brought this action against his employer, Westinghouse Savannah River Co. ("WSRC"), alleging that the terms of the company's pension plan or promises made by the company entitled him to certain pension benefits. Alternatively, he asserts that he was entitled to "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3) (2000) because WSRC breached its fiduciary duty under ERISA, 29 U.S.C. § 1025(a)(1) and (a)(2) (2000), to provide him with accurate information about these benefits. The district court granted summary judgment to WSRC and Schaffer appeals. For the reasons set forth below, we affirm in part, and vacate in part, and remand for further proceedings.

I.

Schaffer began working for Westinghouse Electric Corp. ("WEC") on May 20, 1970, at its Hampton, South Carolina, plant. In early 1989, he moved to the Savannah River Site, a nuclear facility in Georgia operated at the time by E.I. DuPont De Nemours & Co., with the understanding that the Department of Energy would imminently enter into a contract with WEC to operate the site. On March 31, 1989, WSRC, then a wholly owned subsidiary of WEC, began operating the Savannah River Site. Schaffer claims, and for purposes of summary judgment the district court assumed, that before he agreed to move from the Hampton facility to the Savannah River Site and

3

after he did so, management personnel informed him that his service for pension purposes would include his years at both WEC and WSRC.

WSRC administers the WSRC/Bechtel Savannah River, Inc. Pension Plan ("Plan"), which is fully funded by the Department of Energy. In June 1989, Schaffer received a letter from the "Manager of the Benefits and Plans Section of the Human Resources Department" at WSRC informing him that he had an "Adjusted Service Date of May 20, 1970," and that "[i]n the interest of expediency [WSRC has] verified your employment service date(s) with your prior Westinghouse Site(s) and [has] adjusted your service date accordingly." In 1990 Schaffer received an annual benefits statement from WSRC indicating that both his eligibility for a pension and the amount of the pension he would receive were based on his combined years of service to WEC and WSRC. As late as 2000, his annual benefit statement continued to report that his "Adjusted Service Date (for Pension eligibility)" was May 20, 1970, and that his "Credited Service (for Pension calculation)" was based on his combined years of service to WEC and WSRC.

However, in November 2001, WSRC informed Schaffer that the annual benefits statements it had been sending him since 1990 (i.e. for 11 years) were inaccurate because his years at WEC should have counted for pension eligibility only and not for calculating the amount of his pension. More than thirty employees had similarly received annual statements reporting inflated pension values. One

4

other WSRC employee, George Donald Benton, took early retirement in reliance on the inflated estimates of his pension benefits.

Schaffer and Benton filed contemporaneous suits against WSRC. Schaffer raised three distinct and independent claims for relief. First, he alleged that the Plan documents required WSRC to credit his years at WEC in calculating his WSRC pension benefits. Second, he asserted that if the Plan documents did not require WSRC to count his nineteen years at WEC in calculating his WSRC pension, the doctrine of equitable or, more accurately, promissory, estoppel required WSRC to do so because prior to adopting the Plan, WSRC had promised Schaffer that it would credit his years at WEC. Third, Schaffer maintained that WSRC breached its fiduciary duty under ERISA by sending him inaccurate benefits statements for eleven years, entitling him to "appropriate equitable relief" under ERISA, 29 U.S.C. § 1132(a)(3).

The district court limited discovery in this case because the parties had access to discovery from Benton's case. The court entered a discovery order requiring WSRC to provide Schaffer with all Plan documents and any records regarding his participation in the Plan or WEC's pension plan and permitting the use of discovered materials from the Benton case. In the order, the district court advised:

> The parties are encouraged to discuss whether further discovery should be had prior to filing of dispositive motions and to conduct such further discovery as they may agree is appropriate. While the court will not require

5

further participation in discovery prior to filing of the dispositive motions, it will consider the necessity for further discovery when it reviews those motions. To the extent a party seeks further discovery at that time, that party should attach appropriate documentation to demonstrate that the specific discovery is not only necessary to address the particular motion, but was requested and rejected prior to filing of the dispositive motions.

Despite this order, Schaffer did not file his first set of interrogatories or first request for production until the day the parties filed dispositive motions.

II.

Ruling on the parties' cross motions for summary judgment, the district court first addressed Schaffer's belated request for further discovery. The court concluded that "[b]y failing to comply with the court's written directive regarding discovery, Schaffer ha[d] waived any right to seek further discovery in advance of resolution of the pending dispositive motions." The court also pointed out that some of the information Schaffer sought "should have been within the discovery produced in accordance with" the court's discovery order, and, absent a timely motion to compel production, the court would "assume[] that the production was made as directed."

After reviewing the Plan documents and summary plan descriptions ("SPD"), the district court concluded that the Plan

did not require WSRC to count Schaffer's nineteen years at WEC in calculating the amount of his WSRC pension. The court pointed out that Section 3.02(f) of both the 1989 and 1994 Plan documents specifically states that

> An employee with service credited under a qualified retirement plan sponsored by either Westinghouse Electric Corporation or Bechtel Group [or their affiliates] shall be credited with that service for purposes of determining eligibility for certain benefits, but not for computing the amount of any benefit, as of his first date of employment by an Employer or Affiliated Employer.

Similarly, the 1992 SPD defines "credited service," which is used for "benefit accrual purposes," as years worked for WSRC or Bechtel Savannah River, Inc. The court noted that the 1989 SPD states nothing to the contrary and even "suggests that only employees of WSRC or Bechtel Savannah River, Inc. . . . accumulate" years of service "used to calculate the amount of a pension benefit." Accordingly, the court concluded that Schaffer's "strained, though plausible" reading of other "selected and isolated provisions" of the Plan could not "survive the clearly contradictory language [of § 3.02(f)] which unambiguously limits the purposes for which WEC service may be considered."

The district court also rejected Schaffer's claim that under the doctrine of equitable or promissory estoppel, promises made to him prior to the adoption of the Plan bound WSRC to calculate his pension based on his combined years of service to WEC and WSRC. The court reasoned that the oral assurances made to Schaffer before

7

he moved to the Savannah River Site were too vague to constitute a promise to count his nineteen years at WEC in calculating his WSRC pension because the comments could be interpreted merely as guaranteeing that his years at WEC would be counted to determine his eligibility for a WSRC pension. Similarly, the court held that the June 1989 letter Schaffer received from WSRC's human resources department informing him that he had an "Adjusted Service Date of May 20, 1970" could be interpreted to mean merely that his years at WEC would be counted in determining his eligibility for a pension. The court also noted that the 1989 SPD, though issued by WSRC before adopting the Plan, did not entitle Schaffer to the relief sought because it did not state that WSRC would count years of service to WEC in calculating the value of a WSRC pension.

The district court found that "[t]he only documents which clearly suggest the result Plaintiff seeks are the annual benefits statements." The court concluded that not even the earliest annual benefit statement could constitute a binding pre-Plan promise as to how benefits would be calculated because Schaffer did not receive any statement until after the Plan was adopted, "which occurred no later than the fall of 1989." Thus, the court found no estoppel doctrine required WSRC to count Schaffer's years at WEC in calculating his pension.

The court explained, however, that "[t]he conclusion that Schaffer cannot succeed under the terms of the Plan does not

8

foreclose the possibility of all recovery. It remains possible for Schaffer to obtain equitable relief for WSRC's breach of its duty to provide accurate information." Noting that "it is undisputed that WSRC provided inaccurate annual benefits statements" and "that the same mistake was made consistently over a period of years and as to many (if not all) similarly situated individuals," the court concluded that "Schaffer is entitled, as a matter of law, to a ruling that WSRC breached its fiduciary duty by providing inaccurate information" in violation of 29 U.S.C. § 1025 (a)(1) and (a)(2).

Relying on Varity Corp. v. Howe, 516 U.S. 489, 514-15 (1996), and Griggs v. E.I. DuPont De Nemours & Co., 237 F.3d 371, 380 (4th Cir. 2001), the court stated that it could only award a remedy for the breach that was "truly equitable in nature" and "limited to that necessary to remedy the breach of fiduciary duty." The court rejected Schaffer's request that the court order WSRC to pay him the benefits estimated in his annual statements, explaining "[t]his form of 'specific performance'" could not be "fairly" classified as equitable relief and "[was] not, therefore, within the remedies the court can grant for a breach of fiduciary duty." The court similarly rejected Schaffer's request that WSRC compensate him for the increased costs he sustained by staying at WSRC rather than transferring back to WEC, which he claims he would have done had he

known WSRC would not credit his years at WEC in calculating his pension benefits.

Schaffer noted this appeal, arguing that the district court erred in curtailing discovery, in concluding that neither the Plan nor pre-Plan promises required WSRC to credit his years at WEC in calculating his pension benefits, and in finding no equitable remedy existed for WSRC's breach of fiduciary duty.[1]

III.

We review de novo the district court's order granting summary judgment. Lone Star Steakhouse, Inc. & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir. 1995).

_____

[1] After noting his appeal, Schaffer filed a motion asking the district court to set aside its judgment that no equitable remedy exists for WSRC's breach of fiduciary duty under ERISA. Schaffer relied on Hollingsworth v. Westinghouse Electric Corp. and Westinghouse Savannah River Co., No. GD 99-18449 (Pa. Ct. of Common Pleas Apr. 26, 2004). There, the court found that by 1991, WSRC had learned that "because of the quirks of WEC's qualified pension plan," employees who moved from WEC to WSRC "would receive less money from their pensions because of their transfer to WSRC." Id. ¶ 18. In response to this realization, WSRC created a plan, known as the "delta plan," to compensate employees for the shortfall in their pensions. Schaffer contended that the district court should order, as a proper equitable remedy, that he be permitted to participate in this plan. The district court denied Schaffer's motion when WSRC agreed it would not argue claim preclusion if Schaffer filed a separate lawsuit seeking benefits under the delta plan. Schaffer argues on appeal that the district court erred in denying his motion because the Hollingsworth factual findings contradict assumptions underlying the district court's conclusion that no equitable remedy exists to cure WSRC's breach of fiduciary duty. We need not consider this argument because, as explained within, WSRC has now conceded that, regardless of the Hollingsworth findings, an equitable remedy for this breach does exist.

10

We read the Plan documents and summary plan descriptions as the district court did. Accordingly, we hold the Plan does not require WSRC to credit Schaffer's nineteen years at WEC for pension benefit accrual purposes.

We also agree with the district court that Schaffer's estoppel claim must fail. Only promises made prior to the adoption of a Plan can give rise to a claim of equitable or promissory estoppel. See Healthsouth Rehabilitation Hospital v. Am. Nat'l Red Cross, 101 F.3d 1005, 1011 (4th Cir. 1996). As the district court recognized, the annual statements constituted the only representations made by WSRC to Schaffer promising to credit his years at WEC in calculating his pension benefits, and Schaffer did not receive these statements until after WSRC adopted the Plan.[2] Therefore,

---

[2] Schaffer argues that a genuine dispute of fact exists as to whether WSRC adopted the Plan before it sent him his first annual statement. This argument fails. "[E]ven where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery," a plaintiff cannot defeat the grant of summary judgment by resting "upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). The district court's discovery order required WSRC to provide Schaffer with the relevant information and gave the parties an opportunity to seek further discovery. If Schaffer thought the discovery order insufficient, he should have filed a timely request for further discovery; if he thought WSRC failed to comply with the order, he should have filed a timely motion to compel. He did neither. The district court did not abuse its discretion by denying Schaffer's untimely request for further discovery -- even if the potentially discoverable information was relevant to a dispositive motion. See Lone Star Steakhouse, 43 F.3d at 928-29. We also note that at oral argument WSRC represented that it produced in discovery all evidence it had pertaining to the

11

the district court correctly concluded that the annual statements could not give rise to relief under the doctrine of equitable or promissory estoppel.

But just because Schaffer's first two theories for relief fail does not necessarily mean he is not entitled to any relief. The district court determined that WSRC breached its fiduciary duty under ERISA, 29 U.S.C. § 1025(a)(1) and (a)(2), to provide Schaffer with accurate information regarding his pension. WSRC does not appeal that determination. By statute a court may "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan" or award Schaffer "other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

The district court correctly ruled that requiring WSRC to credit Schaffer's years at WEC in calculating his pension benefits would not be an equitable remedy because it would put him in a better position than he would have been in had the breach never occurred.

However, we disagree with the district court's conclusion that, as a result, no equitable remedy exists for WSRC's breach. Indeed, at oral argument, WSRC expressly conceded that it was

_____

adoption of the Plan; thus we have no reason to believe remanding the claim for further discovery would have any effect on the ultimate resolution of Schaffer's estoppel claim.

within a court's equitable powers to require WSRC to provide Schaffer with a pension equivalent to that which he would have received if WSRC had not sent him the inaccurate annual statements and he had returned to WEC upon realizing the true method by which WSRC would calculate his pension benefits. Because the record lacks any basis for determining whether this equitable remedy is an "appropriate" one, we must remand that question to the district court. In making its determination, the court should consider whether the pension Schaffer would have received had he returned to WEC would have been greater than the combined value of the pension he will receive from WSRC for his fifteen plus years of service at the Savannah River Site <u>and</u> the pension he will receive from WEC for his nineteen years at the Hampton facility.[3]

IV.

For the reasons set forth above, we affirm the judgment of the district court except as to its conclusion that no equitable remedy exists for WSRC's breach of fiduciary duty; with respect to that

---

[3] The <u>Hollingsworth</u> court found that some employees who transferred from WEC to WSRC would receive <u>smaller</u> pensions than they would have if they had stayed at WEC because "the WEC pension plan tended to reward longevity of employment once it was achieved and did so by increasing the employer's annual contributions as an employee . . . neared retirement age, whereas the WSRC pension plan called for level employer contributions, without regard to longevity." <u>Hollingsworth</u>, No. GD 99-18449, at ¶¶ 18-19. At oral argument, WSRC insisted that this holds true only for employees who are higher paid than Schaffer. We leave it to the district court to resolve this issue.

issue only, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>